United States District Court
For the Northern District of California

1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

FAUZIA DIN,                                No. C 10-0533 MHP
10
                  Plaintiff,
11                                         **MEMORANDUM & ORDER**
         v.
12                                         **Re:  Defendants' Motion to Dismiss**
HILARY CLINTON, Secretary of State,
13  JANET NAPOLITANO, Secretary of
    Homeland Security, ERIC HOLDER, Attorney
14  General of the United States, et al.,

15                Defendants.
                                        /
16

17         Plaintiff Fauzia Din ("Din") filed the instant action against various governmental defendants

18  seeking review of the government's determination that her husband, Kanishka Berashk, is

19  inadmissible into the United States under Section 212(a)(3)(B) of the Immigration and Nationality

20  Act ("INA"), 8 U.S.C. § 1182(a)(3)(B).  Having considered the parties' arguments and submissions,

21  the court enters the following memorandum and order.

22

23  BACKGROUND

24         Unless otherwise noted, the following facts are taken from plaintiff's complaint.  Docket

25  No. 1 (Complaint).  Din was born in Kabul, Afghanistan but fled to Pakistan in 1996 to escape the

26  Taliban regime.  She entered the United States in 2000 as a refugee, and became a naturalized

27  citizen of the United States on November 20, 2007.

28

In September 2006, Din returned to Afghanistan to marry Kanishka Berashk, whom she had known for many years. Berashk was born in Kunduz, Afghanistan and currently lives in Kabul. Since 2003, he has been employed as a government clerk in the Afghan Ministry of Education, where his duties primarily involve processing paperwork. Prior to 2003, Berashk served as a payroll clerk in the Afghan Ministry of Social Welfare, where he processed payroll for school teachers. Plaintiff alleges that during the Taliban occupation of Afghanistan from 1996–2001, Berashk never implemented, nor was asked to implement, any policy changes on behalf of the Taliban. In addition, plaintiff attests that Berashk never had direct contact with the Taliban regime.

Shortly after her marriage, Din returned to the United States and filed a visa petition for Berashk. On February 12, 2008, the United States Citizenship and Immigration Services ("USCIS") informed Din that her petition had been approved and had been forwarded to the National Visa Center for processing. On July 29, 2008, the National Visa Center informed Din that it had completed the necessary processing. It then scheduled an interview with Berashk at the Islamabad Embassy. On September 9, 2008, Berashk appeared at the Islamabad Embassy for the visa interview and answered all questions asked of him both truthfully and accurately. After the interview, the consular officer gave Berashk a Form 194 letter stating that "Mr. Yaqubi" of the Kabul Embassy would send his passport to the Islamabad Embassy "which will issue the visa and return [the passport] to the Kabul Embassy." The consular officer instructed Berashk to deliver his passport to the Kabul Embassy. During this exchange, Berashk was given no indication of any impediments to his visa application. The consular officer told Berashk that Berashk could expect to receive his visa in two to six weeks, and that the officer was pleased with Berashk's paperwork.

Berashk, however, did not receive his visa within two to six weeks. Berashk placed numerous calls to the Islamabad Embassy between October 2008 and January 2009 to inquire about the status of his application. He was unable to receive any information from the Embassy. On January 28, 2009, Berashk sent an email to the Immigration Visa Unit of the Embassy inquiring about his application. He received the following response: "Our record indicates that the case is still pending under administrative process and we will contact the applicant(s) upon completion of

United States District Court

For the Northern District of California

1   this process.  Also, time duration for the process is always approximated [sic] therefore [sic] cannot

2   be predicted."  Berashk and Din waited five more months to receive a response.  Although they both

3   contacted the Embassy numerous times during this time to determine the status of the visa

4   application, they did not receive any additional information.

5          In early June 2009, United States Congressman Pete Stark sent a letter on Din's behalf to the

6   Islamabad Embassy inquiring about the status of Berashk's application.  Before Stark received a

7   response, on June 7, 2009, Berashk received a Form 194 letter stating that his application had been

8   denied pursuant to Section 212(a) of the INA and that  there was "no possibility of a waiver of this

9   ineligibility."  The form did not indicate which subsection of the statute applied to Berashk.  The

10  letter also included an instruction to refer to Form DSL-851A for further details; however, the

11  referenced form was not included with the denial.  Berashk never received the DSL-851A form.  On

12  June 16, 2009, Representative Stark received a response from Christopher J. Richard, Consul

13  General, which stated:  "Mr. Berashk's case continues to undergo administrative processing. . . .

14  [a]pplicants may have to wait several months or longer before their visas are issued."  Although the

15  letter was dated eleven days after Berashk's application was denied, it nonetheless noted that the

16  application was still pending.

17         On July 11, 2009 Berashk sent an email to the Islamabad Embassy asking why, specifically,

18  his application had been denied.  On July 13, 2009 the Embassy responded, stating that Berashk's

19  application was denied under INA section 212(a)(3)(B), which specifies terrorism-related grounds

20  for inadmissibility.[1]  The email also stated that "[i]t is not possible to provide a detailed explanation

21  of the reasons for refusal" and cited INA subsections (b)(2)-(3), codified at 8 U.S.C. sections

22  1182(b)(2)-(3).  8 U.S.C. section 1182(b)(3) allows the government to withhold the specific reasons

23  for the denial for aliens who have been determined to be inadmissable under 8 U.S.C. section

24  1182(a)(2) or (a)(3).  Din then unsuccessfully attempted to get further information from numerous

25  sources, including the Kabul Embassy, the Islamabad Embassy, LegalNet, the Office of Visa

26  Services, and the Public Inquiries Division of the U.S. State Department.  On January 4, 2010,

27  USCIS sent Din a Form I-797 "Notification of Action," signaling the finality of denial.

28

3

**United States District Court**
For the Northern District of California

1    Din brings this action seeking a writ of mandamus directing defendants to "properly

2    adjudicate" Berashk's visa application.

3

4    LEGAL STANDARD

5    Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for

6    failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6)

7    "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

8    Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts

9    alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th

10   Cir. 1988).  A motion to dismiss should be granted if a plaintiff fails to plead "enough facts to state a

11   claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

12   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

13   possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct.

14   1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

15   Allegations of material fact are taken as true and construed in the light most favorable to the

16   non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  The court

17   need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic

18   recitation of the elements" of a cause of action. *Iqbal*, 129 S. Ct. at 1940; *see also Sprewell v.*

19   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18

20   F.3d 752, 754–55 (9th Cir. 1994).  "Determining whether a complaint states a plausible claim for

21   relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

22   experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

23

24   DISCUSSION

25   Defendants have moved to dismiss asserting a lack of subject matter jurisdiction under Rule

26   12(b)(1) and failure to state a claim under Rule 12(b)(6).  Din counters, arguing that the government

27

28

4

must provide a facially legitimate and bona fide reason for the denial of her husband's visa application.

Din's allegation that the government violated her constitutional rights to due process by denying her husband's visa application satisfies the subject matter jurisdiction requirements of 28 U.S.C. section 1331.  In *Bustamante v. Mukasey*, the Ninth Circuit held that although "it has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review, . . . courts have identified a limited exception to the doctrine where the denial of a visa implicates the constitutional rights of American citizens."  531 F.3d 1059, 1061 (9th Cir. 2008).  Just as in *Bustamante*, Din asserts that she has a protected interest in her marriage, which gives rise to a right to challenge the constitutionality of the procedures used in the consideration of her husband's visa application.  *Id.* ("Freedom of personal choice in matters of marriage and family life is, of course, one of the liberties protected by the Due Process Clause.").  Thus, just as in *Bustamante*, "a U.S. citizen raising a constitutional challenge to the denial of a visa is entitled to a limited judicial inquiry regarding the reason for the decision.  As long as the reason given is facially legitimate and bona fide the decision will not be disturbed."  *Id.*  The court considers each prong—facially legitimate and bona fide—in turn.

I.    Facially legitimate

The government cites to 8 U.S.C. section 1182(a)(3)(B) as the reason for the denial of Berashk's visa.  In *Bustamante*, plaintiff's visa was denied pursuant to section 1182(a)(2)(c), and the court held that "[t]his is plainly a facially legitimate reason, as it is a statutory basis for inadmissibility."  *Id.* at 1062.  Similarly here, the citation to 8 U.S.C. section 1182(a)(3)(B) is a facially legitimate reason.

Din argues that Section 1182(a)(3)(B) is comprised of numerous grounds for inadmissibility and that she was not informed about which particular ground the government applied here.  Consequently, she contends that the lack of granularity renders the reason facially illegitimate.  This granularity, however, need not be provided.  According to 8 U.S.C. section 1182(b)(3), the government may withhold the specific reasons for the denial for aliens who have been determined to

be inadmissable under 8 U.S.C. section 1182(a)(2) or (a)(3).  Consequently, a reference to Section

1182(a)(3) is sufficient to be facially legitimate.

## II.     Bona fide reason

Din argues that the government must demonstrate that its reason for denying Berashk's visa

was bona fide.  Din confuses the burden of proof on the issue.  A valid statutory basis also qualifies

as a bona fide reason for denial unless the plaintiff "[makes] an allegation of bad faith sufficient to

withstand dismissal."  *Bustamante*, 531 F.3d at 1062–63; *see also Amer. Acad. of Religion v.

Napolitano*, 573 F.3d 115, 137 (2d Cir. 2009) (holding that a consular officer's facially legitimate

decision was non-reviewable "in the absence of a well-supported allegation of bad faith, which

would render the decision not bona fide").  Din therefore bears the burden of pleading a well-

supported allegation of bad faith sufficient to withstand dismissal.

Din claims that "[t]he fact that Mr. Berashk's low-level employment in the Afghan Ministry

of Social Welfare before, during, and after the Taliban occupation of Afghanistan alone cannot

trigger any of the grounds for inadmissibility listed in 8 U.S.C. § 1182(a)(3)(B), and no other facts

relevant to those grounds of inadmissibility exist."  Complaint ¶ 57.  This assertion, which the court

will assume is true for the purposes of this motion, is insufficient to allege bad faith.  "Under

*Mandel*'s limited inquiry, the allegation that the Consulate was mistaken about [the visa applicant's]

involvement with [illegal activities] . . . fails to state a claim upon which relief could be granted."

*Bustamante*, 531 F.3d at 1063.  Although Din's allegation suggests that the government may have

been mistaken in failing to grant the visa on terrorism-related grounds, it does not suggest that the

"consular official did not in good faith believe the information he had."  *Id.* at 1062.  Nor does it

allege that the consular official did not receive the pertinent information from other governmental

organizations or acted upon information she knew to be false.  *Id.* at 1063.  In this respect, the

situation here is indistinguishable from *Bustamante*, where "the Bustamantes alleged in their

complaint that Jose is not and never has been a drug trafficker," except that Din alleges that Berashk

has never engaged in terrorism-related activities.  *Id.*  In sum, while the facts that Din has pled may

6

United States District Court

For the Northern District of California

1  be "consistent" with a finding of bad faith; they do not cross the line from possibility to plausibility

2  of entitlement to relief.  *Iqbal*, 129 S. Ct. at 1949.

3        For the same reasons, Din's allegation that the Form 194 letter states that the Islamabad

4  embassy will issue Berashk's visa does not suggest bad faith.  Din does not allege that Berashk was

5  told that the visa would be granted, simply that if it were to be granted, it would be issued by the

6  Islamabad embassy.  Morever, this allegation suggests simply that the statements in the letter may

7  have been made either improvidently or prematurely, not in bad faith.  Din's blanket assertion that

8  "[n]o good faith exists that is sufficient to constitute a facially legitimate and bona fide reason for

9  the denial of Mr. Berashk's visa application under 8 U.S.C. § 1182(a)(3)(B)" is also insufficient.

10  Complaint ¶ 57.  Under *Iqbal*, a pleading that offers mere "labels and conclusions" or "a formulaic

11  recitation of the elements of a cause of action will not do."  *Iqbal*, 129 S. Ct. at 1949 (quoting

12  *Twombly*, 550 U.S. at 555).  Therefore, Din has failed to state a claim upon which relief can be

13  granted.

14        Din urges the court to delve deeper into the factual issues here.  She cites to various parole

15  denial cases to support this contention.  However, as the Second Circuit has held, the reasoning in

16  these cases cannot be used when assessing the legitimacy of a visa denial:

17      We doubt that the judicial decisions reviewing administrative denial of parole are
    even applicable to the consular denial of a visa.  Although several courts purport to

18      apply the *Mandel* standard when reviewing denials of parole, the parole and visa
    decisions are significantly different.  Parole concerns release from determination; a

19      visa concerns admission into this country.  It is understandable that some courts
    exercising habeas jurisdiction would make at least a limited factual inquiry as to a

20      local District Director's ground for confining an alien.  But a similar inquiry does not
    seem appropriate concerning the visa decision of consular officers stationed

21      throughout the world.

22  *Amer. Acad. of Religion*, 573 F.3d at 136.  This court agrees with the Second Circuit's rationale.

23  Din's attempt to draw support from *Allende v. Shultz* is likewise unpersuasive because "that decision

24  declared a visa denial invalid because the supporting affidavit made clear that the denial had been

25  based on the applicant's prior speeches, activity that the Court ruled was an impermissible basis

26  under then-existing law."  *Id.*  (citing *Allende v. Shultz*, 845 F.3d 1111, 1120–21 (1st Cir. 1988)).

27  This court therefore declines to undertake a more sweeping factual inquiry.

28

7

United States District Court

For the Northern District of California

1    The court is aware that because the government invoked its statutory right under 8 U.S.C.

2    section 1182(b)(3) to withhold explanation of its rejection of Berashk's visa application, Din

3    possesses little relevant information with which to meet the requirements of Rule 8.  Although the

4    burden is on plaintiff to make a well-supported allegation of bad faith, here, because of Section

5    1182(b)(3), it is nearly impossible for Din to obtain and therefore plead any facts that would meet

6    the pleading standard under *Iqbal*.  Indeed, Din does not even know the particular basis for the

7    rejection of the visa application.  Nor does Din know the information the government relied upon

8    when making its determination.  Consequently, Din cannot plead that the Consulate did not receive

9    the relevant information from other governmental agencies, or that the "Consulate acted upon

10   information it knew to be false." *Bustamante*, 531 F.3d at 1063.  It therefore appears that there is

11   effectively no opportunity for review or recourse for spouses of visa applicants who are denied

12   further information about their rejections under Section 1182(b)(3).  Nevertheless, the catch-22

13   created by Section 1182(b)(3) cannot be resolved by a mere incantation that the government acted in

14   bad faith.  Thus, on the record before the court, there is no reason to believe that the consular officer

15   acted in bad faith.  Therefore, the first and third causes of action are dismissed.

16   III.    Notice provision

17          Din also seeks, as her second cause of action, a judicial declaration that the notice of denial

18   provisions in 8 U.S.C. section 1182(b)(3) are unconstitutional as applied to her.  The notice

19   provisions, however, apply only to the alien and not the United States citizen; consequently, Din

20   lacks standing to challenge the statute.

21

22   CONCLUSION

23          Defendants' motion to dismiss is GRANTED.  The Clerk of the Court shall close the file.

24          IT IS SO ORDERED.

25   Dated: June 21, 2010                                    _____

26                                                           MARILYN HALL PATEL
                                                             United States District Court Judge
                                                             Northern District of California

27

28

8

**ENDNOTES**

1.      INA section 212(a)(3)(B), codified as 8 U.S.C. section (a)(3)(B) states that an alien is admissible who:

(I) has engaged in a terrorist activity;

(II) a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity (as defined in clause (iv));

(III) has, under circumstances indicating an intention to cause death or serious bodily harm, incited terrorist activity;

(IV) is a representative (as defined in clause (v)) of--
        (aa) a terrorist organization (as defined in clause (vi)); or
        (bb) a political, social, or other group that endorses or espouses terrorist activity;

(V) is a member of a terrorist organization described in subclause (I) or (II) of clause (vi);

(VI) is a member of a terrorist organization described in clause (vi) (III), unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization;

(VII) endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization;

(VIII) has received military-type training (as defined in section 2339D(c)(1) of Title 18) from or on behalf of any organization that, at the time the training was received, was a terrorist organization (as defined in clause (vi)); or

(IX) is the spouse or child of an alien who is inadmissible under this subparagraph, if the activity causing the alien to be found inadmissible occurred within the last 5 years . . . .